## Bartley, et al, v. Elkhorn Cons. Coal & Coke Co.

(Decided January 31, 1913.)

### Appeal from Pike Circuit Court.

1. Master and Servant—Action by Infant Servant for Injuries in Coal Mine—Instruction.—Where, in an action brought by an infant to recover damages for personal injuries caused by falling slate in a mine, it was made to appear from the plaintiff's evidence that he was required to fire an engine and procure coal for that purpose by shooting or blasting it in an entry of the mine which was unsafe for such work because of the absence of props to the roof; and it also appeared from the plaintiff's evidence that he was inexperienced in the work required of him and had not been warned of the danger attending its performance or instructed how to protect himself from such danger, the giving, by the trial court at the conclusion of the plaintiff's evidence, of a peremptory instruction directing a verdict for the defendant, was error.

2. Master and Servant—Assumed Risk—Burden of Proof.—The burden is on the master to show that the servant took the risk with knowledge of the danger; and also to show that he failed to use ordinary care for his own safety, but for which he would not have been injured.

3. Master and Servant—When Servant Does Not Assume Risk.—It is a well recognized rule of law, that where a minor servant, by reason of his youth and inexperience is unacquainted with the dangers incident to his employment, he does not assume the risks thereof, where there has been a failure on the part of the master to warn him of the danger to which he is exposed and instruct him how to do his work and avoid the danger.

4.  **Master and Servant—Inexperienced Servant—Duty of Master to Warn Servant.**—Although the premises where and appliances with which the servant is at work are reasonably safe, yet the master is not thereby relieved from warning and instructing the servant, if he is young and inexperienced and the service is dangerous, and such that an inexperienced servant would not appreciate and understand the danger.

F. W. STOWERS, HOBSON & HOBSON, for appellant.

BUTLER & MOORE, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Reversing.

The appellant, Willie Bartley, an infant, by his next friend brought this action against the appellee, Elkhorn Consolidated Coal and Coke Company, in the court below, to recover damages for injuries sustained to his person from falling slate in its mine, where he was at the time employed; it being alleged in the petition that his injuries were caused by the negligence of appellant in failing to provide him a reasonably safe place to work.

The answer of appellee contained a traverse, and pleas of assumed risk and contributory negligence on the part of applicant, which pleas were controverted by the latter's reply. On the trial the circuit court, following the conclusion of appellant's evidence, peremptorily instructed the jury to find for the appellee, and such was their verdict. Appellant excepted to the giving of the peremptory instruction, and to obtain a review of the circuit court's ruling in that particular and of its refusal to grant him a new trial, prosecutes this appeal from the judgment entered upon the verdict.

According to the uncontradicted testimony of appellant and his physician, his injuries consisted of painful cuts on the face and head, a crushed leg and fractured vertebrae. Scars resulted from the facial wounds; the fracture of the vertebrae produced a prominent knot in the back, and the crushing of the leg shrinkage of the muscles thereof, until it became, and is, so much smaller and shorter than the other leg, that it compels appellant to limp in walking. The injuries, in addition to causing him great physical and mental suffering, confined appellant to his bed or room two months, and there can be no doubt that they have permanently impaired his ability to earn money, for, according to the evidence, the injury to his back will always prevent his lifting anything of considerable weight, and that to his leg may reasonably be expected to continue his lameness for life.

We are advised by the briefs of counsel that the peremptory instruction, in obedience to which the verdict for appellee was returned, was given by the trial court upon the ground that appellant's assumption of the risk incurred and his contributory negligence barred a recovery.

Our reading of the evidence found in the record does not permit us to sustain this conclusion. But two witnesses testified in the case, appellant and his physician; and as the latter only testified as to the nature and extent of appellant's injuries, appellant's testimony furnishes the only information as to the manner in which his injuries were received. It is apparent from his testimony that at the time of receiving the injuries he was but a boy, 17 years of age, with little experience in the work of mining. He had, it is true, before entering appellee's service, been employed in another mine for several months but had worked in appellee's mine about two months when injured. His work in the first mine had been confined to loading coal, laying pipe, track laying and signaling cars. During his stay in appellee's mine he was similarly employed except, that two weeks or more before he was injured he was put at the additional work of occasionally firing the engine by which the mine was ventilated. Although, while in appellee's mine, he served for a few days as an assistant or "buddy" of one of the miners, he had never done any blasting or shooting of coal until required to fire the engine. In the performance of his duties as fireman he fed the engine with coal, which he was required to shoot or blast and get out from an apartment or room of the mine situated at a point convenient to the engine, from which he carried it in a wheelbarrow to the engine. The room from which the coal for the engine was obtained was twelve or fifteen feet wide, twenty feet in length and its roof four feet from the floor. When first put at the work of firing the engine appellant's duties were, in some sort, explained to him by one Layne, a miner, at the direction of Morris Goodson, foreman of the mine, and Layne took appellant to the room from which he was required to get the coal for the engine; told him how the shooting of the coal was to be done and pointed out the place for shooting it.

He, however, did no boring or shooting in appellant's presence by way of demonstrating the minutiae of the

work, nor did he, the mine foreman or any other employe of the appellee, thereafter, and before appellant was injured, again enter with him the room or further explain to him how his duties should be performed.

When Layne took the appellant to the room he gave him no information as to the danger to be apprehended of the falling from the roof of slate, or of the necessity of his maintaining from time to time there was in the the roof; and although at that time there was in the roof at the rear end of the room a piece of slate or stone hanging loose at one end, there were no props anywhere under the roof nor any placed therein before appellant was injured.

It further appears from the evidence that appellant between the time of his undertaking the duty of firing the engine and receiving his injuries, had not made exceeding a dozen shots or blasts in procuring coal from the room in question for the engine, and that on the afternoon of the accident he was, by direction of the mine foreman, called from a slack dump where he was at work to go and fire the engine. Upon going to the engine and finding that there was no coal there with which to start it, he went to get it from the room in question, and in procuring it there sustained the injuries complained of. The manner in which they were received we describe in the witness's own language:

"I went there to shoot some coal, shot it down, and went back down to the furnace and come right back in about five or ten minutes and went in there. I heard the slate start and I jumped, started to run out, slate caught me, hit me in the back, the head, and it mashed this leg, and I supposed it knocked me against the coal and cut my face."

In view of the foregoing facts, argument is not needed to demonstrate that the room from which appellant was required to get coal, was a dangerous place for him to work or that it was made dangerous because of appellee's negligence. It was its duty to use ordinary care to provide appellant with a reasonably safe place to work. Sufficient propping of the roof of the mine would have made appellant's place of work safe, and such props the law made it the duty of appellee to furnish. Section 2739b, subsection 7, Kentucky Statutes, provides:

"Each owner, lessee or operator of every mine to which the mining laws of the state apply shall provide

and furnish to the miners employed in said mine a sufficient number of caps and props, said props to be sawed square at each end, to be used by said miners in securing the roof in their rooms, and at such other working places as by law or custom of those usually engaged in such employment it is the duty of said miners to keep the roof propped, after the miner has selected and worked the same.''

Here no props were provided by appellee, but had they been furnished, it is questionable whether appellant was sufficiently skilled in mining to set them up without instruction from an experienced miner, for, as previously indicated, he had not, according to the evidence, been advised, nor did he know, that the use of props was necessary, or that without them, there was danger of the slate's falling from the roof upon him.

So, according to the only evidence in the case, appellee's negligence in failing to provide appellant with a reasonably safe place to work was established; and whatever may be developed on another trial by evidence in appellee's behalf, that furnished by appellant on the last trial affords no proof of assumption of risk or contributory negligence on his part. On the contrary it shows that appellant went for coal for the engine where he was specially directed to get it; that to procure it he made the shot or blast where Layne had told him to make it; that he was ignorant of there being any danger to him from the falling of slate and had not been advised as to such danger or instructed in any way in respect to his duties, except as to how and where to shoot the coal.

The burden is on the master to show that the servant took the risk with knowledge of the danger, and also to show that he failed to use ordinary care for his own safety, but for which, he would not have been injured. Lex. Ry. Co., v. Cropper, 142 Ky., 39; Cumb. Tel. & Tel. Co., v. Graves, 31 R. 973.

It is a well recognized rule of law, that where a minor servant, by reason of his youth and inexperience is unacquainted with the dangers incident to his employment, he does not assume the risks thereof, where there has been a failure on the part of the master to warn him of the danger to which he is exposed and instruct him how to do his work and avoid the danger. James v. F. A. Ames & Co., 26 R. 498; Cohankus Mfg. Co., v. Rogers Gdn. 29 R. 747; Chess & Wymond Co., v. Gohagan's Gdn.

32 R. 372; B. F. Avery & Sons v. Cottrell's Gdn. 32 R. 914; Owensboro Stave and Barrel Co., v. Doherty, 33 R. 328; Monroe v. Standard Sanitary Mfg. Co., 141 Ky. 549.

One of the most recent cases before us, involving the question under consideration, was that of Sandy River Coal Co., v. Dutton, 143 Ky., 411, wherein we, in substance, held, that where a servant, by reason of youth or inexperience, does not appreciate the dangers incident to his employment, the master must warn and instruct him, so that he will appreciate and understand them, or the master is guilty of actionable negligence.

In W. A. Gaines & Co., v. Johnson, 133 Ky. 58, we held that though the premises where and appliances with which the servant is at work are reasonably safe, yet the master is not thereby relieved from warning and instructing the servant, if he is young or inexperienced and the service is dangerous and such that an inexperienced servant would not appreciate or understand the danger.

If, as argued by counsel for appellee, the slate in the roof of the mine was in such an unsafe condition as to make the danger to appellant of shooting the coal when and where he did, so obvious and imminent that, though inexperienced and unwarned, he must, or ought to, have known of the danger from falling slate and escaped it, by not going into the room where the shooting occurred after it was done, that was a question of fact for the jury to consider in determining whether he was guilty of contributory negligence; that is, whether at the time of receiving his injuries, he exercised such care for his own safety, as would reasonably be expected of a person of his age and inexperience under like circumstances.

In our view of the case the peremptory instruction was unauthorized; the judgment is, therefore, reversed and cause remanded for a new trial consistent with the opinion.