Joe L. CHITTUM, etc. et al., Appellants,

v.

Edward C. ABELL, Jr., et al., Appellees.

Edward C. ABELL, Jr., et al., Appellants,

v.

GREER BROTHERS & YOUNG, INC.,
Appellees.

Joe L. CHITTUM, Individually, etc., et al.,
etc., Appellants,

v.

MOORE & CHITTUM, INC., Appellee.

Court of Appeals of Kentucky.

May 12, 1972.

Rehearing Denied Oct. 20, 1972.

Patterson & Berger, Logan E. Patterson, Pineville, Stiles & Miller, Robert R. Miller, Louisville, for appellant, Joseph L. Chittum, Individually, and as Executor of the Estate of Mary Ruth Chittum.

William A. Miller, Louisville, for appellant and also appellee, Moore & Chittum, Inc.

Woodward, Hobson & Fulton, Kenneth L. Anderson, Louisville, Grant F. Knuckles, Pineville, David C. Pottinger, Louisville, for appellees, Edward C. Abell, Jr., Roberta Abell and Merritt R. Millett.

Charles G. Cole, Barbourville, for appellee, Greer Brothers & Young, Inc.

CULLEN, Commissioner.

We have three appeals arising out of two summary judgments (determined and recited by the trial court to be final in accordance with CR 54.02) in litigation growing out of an automobile accident. An automobile driven by Mary Ruth Chittum somehow got on the wrong side of a two-lane road and collided head-on with an automobile occupied by owner-passenger Merritt R. Millett and by employe-driver Edward C. Abell, Jr. Mrs. Chittum was killed and Millett and Abell were seriously injured. In the litigation that grew out of the accident, in addition to claims that each of the drivers was negligent, there was a claim that a highway contractor's negligence, in failing to post proper warnings of construction work in the area, was responsible for Mrs. Chittum's being on the wrong side of the road. There also was a claim that a corporation of which Mrs. Chittum was an officer was liable for her negligence. The net effect of the two summary judgments here on appeal was that Millett and Abell (and Abell's wife on a consortium claim) were held entitled to recover damages against Mrs. Chittum's estate and the corporation of which she was an officer (the amount of damages to be determined subsequently by a jury trial); and the corporation was held entitled to indemnity against Mrs. Chittum's estate for such of the damages as it might be compelled to pay, and for its attorney fees in defending the action.

Mrs. Chittum's executor, and her surviving husband, who had asserted a damage claim of his own, have appealed, maintaining that the granting of summary judgment on the basic issues of liability was improper because there were genuine issues of fact on all aspects of liability. Specifically, the executor and husband complain of the adjudications that (1) the highway contractor was not liable for their damages; (2) the highway contractor was not liable, solely, primarily or jointly, for the damages claimed by Millett and the Abells, and thus was not liable to the Chittum estate by way of indemnity or contribution as to those damages; (3) Mrs. Chittum was negligent and Abell was not contributorily negligent, so that the Chittum estate was liable for damages to Millett and the Abells; and (4) the Moore & Chittum corporation, of which Mrs. Chittum was an officer, was responsible for her negligence and thus was liable to Millett and the Abells for their damages. The executor complains further of the adjudication (by the second of the two summary judgments entered below) that the Chittum estate must indemnify the Moore & Chittum corporation to the extent of its liability to Millett and the Abells, and for its attorney fees in this action.

The Moore & Chittum corporation also has appealed, asserting that there was a genuine issue of fact as to whether Mrs. Chittum, in making the trip in the course of which the accident occurred, was acting as agent for the corporation, wherefore it was improper to enter summary judgment holding the corporation liable for Mrs. Chittum's negligence. The corporation further argues the impropriety of summary judgment on the issue of liability of the Chittum estate to Millett and the Abells.

Millett and the Abells have taken a "protective" appeal from the adjudication that the highway contractor was not liable to them, but they seek a reversal on their appeal only if the judgment is reversed on the other appeals as to the determination of basic liabilities.

A summary of the facts of the accident is in order. The circumstances, fully developed on motion for summary judgment, are not substantially in dispute, and it does not appear that any material additional proof might be presented on a trial.

The accident occurred on U.S. Highway 25E a short distance south of Pineville, Kentucky. At the point of the accident the highway had only two lanes, one for north-

bound traffic and one for southbound. The accident took place in a curve, and along the center of the highway, beginning 150 to 200 feet north of the point of the collision and extending a considerable distance south of that point, there were freshly painted double yellow lines indicating a prohibition against passing. Mrs. Chittum was going south and the Millett-Abell car was going north. As hereinbefore stated, the cars collided in the northbound lane, Mrs. Chittum's car having gotten completely on the wrong side of the road. Mrs. Chittum was killed and thus her story was not available. Abell was unable to remember any of the circumstances of the accident. Millett was able to give only a few details. His testimony was that he had been doing some paperwork, writing on a pad in his lap with his head down, as they approached the scene of the accident. He suddenly noticed Abell stiffen up. He immediately looked up and saw the Chittum car headed toward them in their traffic lane, 100 to 125 feet away. He had no recollection of whether Abell swerved the car, applied the brakes, or did anything to avert the accident before the collision. However, the positions of the cars after the accident indicated that Abell had turned partly off onto the shoulder before the impact. Millett said that his car was going about 40 miles per hour. He made no estimate as to the speed of the Chittum car, but after the accident the speedometer of that car was found to be stuck on either 55 or 60 miles per hour.

■ At this point in the discussion, we deem it appropriate to dispose of the contention, by the appellant Chittum interests, that there was a triable issue of fact as to contributory negligence of Abell (imputable to Millett as his employer). We think it is plain that if Mrs. Chittum did not cross over to the wrong side of the road until she was within 100 to 125 feet of the Abell-Millett car, when Millett first saw her and when he noticed Abell "stiffen up," Abell had no chance to avoid the collision, because even if each vehicle was going only 40 miles per hour, they were destined to meet in one bare second. And there is nothing to furnish the basis for an *inference* that the Chittum car was on the wrong side of the road any appreciable time or distance before Millett saw it, because there are no circumstances indicating the *probability* of that fact. We conclude, therefore, that summary judgment was proper on the question of Abell's contributory negligence.

The other issues in the case require a further statement of facts.

At the time of the accident, work was in progress to convert U.S. Highway 25E into a four-lane divided highway. The accident happened around 1700 feet south of a railroad crossing. For a considerable distance north of this crossing the work had been completed and the four lanes were in use, so Mrs. Chittum, traveling south, had traversed that section of the highway. South of the railroad crossing the old two-lane highway was designed to become the southbound lanes of the divided highway, and new northbound lanes were under construction to the east, with a 15-foot median. Construction on the new northbound lanes was near completion, and the pavement had been laid, but the lanes were not quite ready for traffic. Therefore, immediately south of the railroad crossing, the new northbound lanes were blocked off; traffic going south was diverted from two lanes into one, and northbound traffic was directed to cross over from its one-lane path to the two northbound lanes extending north from the railroad crossing.

While there was some negative evidence in the form of statements by some witnesses that they did not see any of the signs, or did not see certain of them, the record establishes with reasonable certainty that there were the signs hereinafter mentioned in or along the highway to indicate to southbound travelers that the highway south of the railroad crossing was being converted from a four-lane divided highway to one with two lanes and two-way

traffic.[1] There were three signs on the west shoulder, facing southbound traffic, indicating that there was highway construction ahead; these signs were located, respectively, 1,500 feet, 1,000 feet and 500 feet north of the railroad crossing. At the crossing there were four sawhorses staggered from the left edge of the left southbound lane of the four-lane highway out across that lane. The first bore a large arrow pointing to the right; the second and third each bore reflectors and striped lines; and the fourth carried the words "DO NOT PASS" in large lettering. A short distance past the crossing there was another "DO NOT PASS" sign on a sawhorse on the right shoulder. As hereinbefore stated, beginning at a point a few hundred feet south of the crossing, there were freshly painted double yellow lines in the center of the highway.

The main thrust of the argument of the appellant Chittum interests is that an issue of fact was presented as to whether the signs gave insufficient warning to a traveler such as Mrs. Chittum that the four-lane highway was ending and two-way traffic was commencing. It is argued that by reason of that insufficiency a jury could find that Mrs. Chittum was not chargeable with negligence and the highway contractor was solely negligent, such as to render him liable to the Chittum interests for their damages and to make him alone liable to Millett and the Abells for their damages. In the alternative, it is argued that a jury could find that the highway contractor was at least guilty of primary negligence as against Mrs. Chittum's secondary negligence, so as to entitle the Chittum estate to indemnity against the contractor as to the damages to be recovered by Millett and the Abells.

We think the answer is to be found in a consideration of the element of proximate cause. If it be assumed for the purpose of argument that the signs were deficient, as the Chittum interests contend, in failing to state specifically that the highway was converting to two-lane traffic, the question still remains as to whether that deficiency was the *cause* of Mrs. Chittum's being on the wrong side of the road. There is no suggestion of the availability of direct evidence to explain why she was on the wrong side. Only by an *inference* could the insufficiency of the signs be found to be the cause. To raise such an inference the circumstances would have to be such as to indicate that the deficiency *probably* was the cause. Goss v. Personnel Board, Ky., 456 S.W.2d 824; Bartley v. Childers, Ky., 433 S.W.2d 130; Highway Transport Company v. Daniel Baker Company, Ky., 398 S.W.2d 501; Sutton's Adm'r v. Louisville & N. R. Co., 168 Ky. 81, 181 S.W. 938. As hereinafter explained, we think that in determining the question of probability of causation, consideration must be given to the degree of strength of the evidence of negligence.

While the circumstances shown in this case might be sufficient to sustain a finding of negligence on the part of the highway contractor, they do not strongly indicate such negligence, and on balance would tend to favor a finding against negligence. The signs warning of highway construction, the barricades with crossover indications blocking the left southbound lane, the two "NO PASSING" signs obviously intended to indicate a special traffic situation, the freshly painted yellow double lines, which rarely if ever appear on a four-lane road, and the evidences of grading work in the area, would seem to be very close to enough to warn any reasonably attentive traveler that he should stay in the right traffic lane. The basis for any finding of negligence with regard to the sufficiency of the warnings is weak.

In Klingenfus v. Dunaway, Ky., 402 S. W.2d 844, this court held that weak evidence of negligence would not raise to a probability the mere possibility suggested by the conditions at the scene of an accident

---

[1]. The negative testimony was not sufficient to overcome the positive evidence of the presence of the signs. See Cantrill Construction Co. v. Gann, Ky., 432 S.W.2d 51.

that the accident was caused by the claimed negligence. It is *possible* in the instant case that Mrs. Chittum's being on the wrong side of the road across double yellow lines some 1700 feet past a point where she had been compelled by barriers to occupy the right lane and had been warned by a multiplicity of signs that construction work was going on and passing was prohibited, was due to her failure to be alerted to the fact that she was on a road with two-way traffic. It is equally possible, however, that she went to sleep, or became momentarily inattentive, or was stung by a bee and lost control of her car, or had a flat tire, or that any of a number of things caused her to be on the wrong side of the road.

█ It is our conclusion that the circumstances presented no more than a possibility or a basis for conjecture that the accident was caused by insufficiency of the warning signs, and therefore would not raise an inference of that fact. Cf. Caplinger v. Werner, Ky., 311 S.W.2d 201; Hatcher v. Mullins, Ky., 296 S.W.2d 456; Shephard v. Great Atlantic & Pacific Tea Co., 305 Ky. 799, 205 S.W.2d 687.

██ This disposes of the various contentions relating to the exoneration of the highway contractor. It disposes also of the contention that Mrs. Chittum should not have been held negligent. It was incumbent upon her representatives to explain her presence on the wrong side of the road. Webb Transfer Lines v. Taylor, Ky., 439 S.W.2d 88; Gross v. Barrett, Ky., 350 S.W.2d 457; Davis v. Kunkle, 302 Ky. 258, 194 S.W.2d 513. The suggestion of the mere *possibility* that she was there justifiably because the warning signs were insufficient cannot be considered an adequate explanation.

█ We shall now consider the contention that it was error to enter summary judgment holding the Moore & Chittum corporation liable to Millett and Abell for Mrs. Chittum's negligence. The evidentiary matter considered on the motion for summary judgment showed that Mrs. Chittum was on her way to New Tazewell, Tennessee, and that the trip had two purposes: (1) A vacation visit to the homes of relatives; and (2) a call on Mr. Chittum's sister to ask her to lend some money to him which he in turn would lend to the corporation to meet a need for operating funds. The appellants argue that the evidentiary material would warrant a finding that the social visiting was the primary or predominant purpose for the trip and the loan soliciting was merely incidental, wherefore the trip was not an agency venture for the corporation. It is our opinion, however, that the evidentiary material requires the conclusion that the loan soliciting was at least a concurrently important purpose for the trip, and therefore the trip was in an agency capacity. See Craddock v. Imperial Casualty and Indemnity Co., Ky., 451 S.W.2d 658. Mr. Chittum testified that "it was a split vacation plus company business and trying to get the money." A resolution of the corporation, adopted shortly before the trip, recited that a suggestion had been made that Mrs. Chittum "make a trip" to New Tazewell "to borrow money for the company," and that a motion was made and carried that Mrs. Chittum "make the trip for the company." The company paid for the gasoline with which the car was filled at the start of the trip. After the accident a workmen's compensation claim was filed for Mrs. Chittum's death and on the employer's report form Mr. Moore of the Moore & Chittum corporation stated that Mrs. Chittum was "on company business" when she was killed.

This leaves for consideration the issues raised with respect to the judgment which held the Moore & Chittum corporation entitled to indemnity, including attorney fees incurred in the defense of the action, against Mrs. Chittum's estate. The contentions are that the judgment was premature, and that in any event the allowance of attorney fees was erroneous.

The judgment was not premature. The adjudications of liability and of the right to indemnity could have been made in one judgment. See Parker v. Redden, Ky., 421 S.W.2d 586; Lexington Country Club v. Stevenson, Ky., 390 S.W.2d 137. It was ill-advised of the trial court to enter a separate "final" judgment for indemnity, since it necessitated a separate appeal. However, that alone would not be a ground for reversing the judgment, since the reversal would not remedy the situation.

We are persuaded, however, that the allowance of attorney fees was improper. Attorney fees reasonably incurred in the defense of the claim for damages may in appropriate circumstances be allowed in the judgment of indemnity for the damages. 42 C.J.S. Indemnity § 24, p. 602. They have been so allowed in at least two Kentucky cases. See Phelps v. Brown, Ky., 295 S.W.2d 804, and Coca Cola Bottling Co. of Louisville v. Lowe, Ky., 275 S.W.2d 47. It appears, however, that the allowance of such fees is not automatic in an indemnity judgment, but rather depends upon the equities of the situation, and particularly upon whether the indemnitor failed to provide adequate defense of the claim for damages.

In *Phelps*, the indemnitor completely failed to defend the damage claim and the indemnitee was required to employ counsel to defend it. In *Coca Cola* the defenses of the indemnitor and the indemnitee were antagonistic, as each was undertaking to impose liability on the other.

The Restatement rule is stated in terms of the failure of the indemnitor to discharge a *duty* owed by him to the indemnitee. See Restatement of the Law of Restitution, Secs. 76, 77, 80, pp. 331, 341, 355. We think there are *two* duties on the part of the agent involved in a situation such as here presented. The first duty is not by negligent conduct to expose the principal to a *claim for damages*. The second, which arises after the first has been violated, is to *defend* against the claim for

damages. In the instant case the agent employed counsel and vigorously defended the claim for damages, and there is no suggestion that there was any dereliction of duty in that regard. There was no antagonism of defenses. The corporation was not required to employ counsel to defend the damage claim, as far as concerned the liability of Mrs. Chittum to Millett and the Abells from which the corporation's liability as principal would arise. It is true that the corporation may have been required to employ counsel to make the defense that Mrs. Chittum was not an agent of the corporation at the time of the accident, but the duty to make that defense never was on the Chittum estate. Therefore, the allowance of indemnity for attorney fees was erroneous.

Our ultimate conclusion in the case is, then, that the judgments appealed from should be affirmed except to the extent that indemnity was awarded for attorney fees.

In closing, we deem it necessary to note that the judgment to the extent it adjudged the Chittum estate and the Moore & Chittum corporation liable to Millett and the Abells, reserving the determination of damages for a later trial, was not a final judgment, notwithstanding the trial court's CR 54.02 recitations, because it did not fully adjudicate the damage claim of Millett and the Abells. See CR 54.01. Under CR 54.02 a judgment can be made final if it adjudicates less than all of the claims in the action, but a determination that adjudicates only *part of a claim* cannot be made final. See Clay, CR 56.03, Comment No. 9; Clay, CR 56.04, Comment No. 3. Accordingly, an appeal properly would not lie from the so-called judgment, but since no motion was made to dismiss the appeal, and since a dismissal on the court's own motion would accomplish no useful purpose, the court has treated the appeal as valid.

The judgment in Appeal No. F–151–71 is reversed to the extent that it awards in-

demnity for attorney fees, with directions that judgment be entered denying such an award; in all other respects the judgments on appeal are affirmed. All of the costs in Appeal No. F-151-71 will be assessed against the appellee.

All concur.